**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 20-80025-CR-DMM**

**UNITED STATES OF AMERICA,**

**v.**

**ROBERT DANIEL SOLOVE,**

**Defendant.**

_____/

**UNITED STATES SENTENCING MEMORANDUM AND**
**RESPONSE TO THE DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

 **COMES NOW,** the United States of America, by and through its undersigned Assistant United States Attorney, and respectfully submits the following as the government's sentencing memorandum and response to the defendant's motion for downward variance in this matter:

**I. DEFINITION OF PEDOPHILIA (PAEDOPHILIA)**

 "A persistent or a predominant preference for sexual activity with a prepubescent child or children"[1]

**II. BACKGROUND**

 In a 17-count superseding information filed on January 19, 2021, the United States charged the Defendant, Robert Daniel SOLOVE, with six (6) counts of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); seven (7) counts of Distribution of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1); one (1) count of Child Exploitation Enterprise, in

---

[1] The ICD-10 Classification of Mental and Behavioral Disorders Diagnostic criteria for research World at https://www.who.int/classifications/icd/en/GRNBOOK.pdf. World Health Organization/ICD-10. 1993. Section F65.4 "Paedophilia". Retrieved 2012-10-10.

violation of 18 U.S.C. §2252A(g); one (1) count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2); one (1) count of Coercion and Enticement of Minors, in violation of 18 U.S.C. § 2422(b); and one (1) count of Transfer Obscene Material To Minors, in violation of 18 U.S.C. § 1470 (DE 38).   The parties filed a plea agreement in which the Defendant agreed to plead guilty to two counts of production of child pornography against two separate victims, two counts of distribution of child pornography within two distinct Kik user groups, and one count of possession of child pornography for the items found on the digital devices (DE 46).

The United States Probation Office conducted a thorough Presentence Investigation Report (PSR) regarding the Defendant, which contemplated the guidelines under each of the production counts.  For the production as to Minor Victim 1, the Defendant's base offense level begins at 32 (DE 60, U.S.S.G. § 2G2.1(a)).  He received a four-level increase for a victim being prepubescent, a four-level increase for the performance of a sexual act, a two-level increase for knowingly engaging in distribution, a four-level increase as the offense involved a toddler, and a two-level increase for being a in a position of authority/supervision/relation (DE 60, U.S.S.G. §§ 2G2.1(b)(1)(A), (2)(B), (3), (4), and (5)).  The **adjusted offense level was 48** (DE 60 ¶ 80). For the production as to Minor Victim 2, the adjusted offense level was 44 (DE 60 ¶ 90).  Thus, the offenses also resulted in a multiple count adjustment and a two-level increase in offense level. (DE 60 ¶ 93.  This resulted in a **combined adjusted offense level of 50**.  The chapter four prohibited sexual conduct pattern enhancement was applied, increasing the offense level by 5 additional levels (DE 60 ¶ 95).  After acceptance of responsibility, and since his total offense level exceeded 43 (in fact it **was 52**), the offense **total level is treated as 43**.  (DE 60 ¶ 98).

The Defendant had one criminal history point for a theft conviction in Pennsylvania in 2013 (DE 60 ¶ 102). Despite the resulting guideline imprisonment range of life, the statutory maximum sentence and thus the guideline term of imprisonment is 1,440 months (DE 60 ¶ 148).

The Defendant filed a sentencing memorandum on May 10, 2021, in which he requested a variance to an unstated amount (DE 55).  The United States opposes the variance request and in light of the 18 U.S.C. § 3553(a) factors and believes a 1,440-month (or 120-year) sentence, the maximum per-count sentence, served consecutively is, is lawful, just, and appropriate.

## III. ARGUMENT

The United States believes there are no factors that warrant a variance.   The Defendant's conduct was disturbing and displayed the worst of human nature: he recorded his own sexual molestation his own child 18-month-old child and used it to obtain sexual abuse material of other children on the Internet. He took the innocence of a 13-year-old girl whom he met online and had her produce sexual videos for his enjoyment.  He promulgated multiple online chatrooms to engage in the enterprise of distributing child sexual exploitation material (CSAM)[2] and reveling in the idea of child rape.  The Defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a statutory maximum consecutive 120-year sentence.

"In sentencing a defendant, first the district court 'shall consider ... the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.' 18 U.S.C. § 3553(a)(4)(A)."  The

---

[2] United States federal law defines child pornography and uses that term throughout the federal criminal code. However, more appropriately, child pornography is actually child sexual abuse material (CSAM, for short).  CSAM more aptly describes "what is depicted – the sexual abuse and exploitation of children. Not only do these images and videos document victims' exploitation and abuse, but when these files are shared across the internet, child victims suffer re-victimization each time the image of their sexual abuse is viewed." https://www.missingkids.org/theissues/csam.  The National Center for Missing and Exploited Children explains that "these images and videos depict actual crimes being committed against children. The human element, children at risk, must always be considered when talking about this offense that is based in a high-tech world." *Id.*

Sentencing Guidelines are the appropriate starting point from which the Court exercises its discretion under § 3553(a). *See United States v. Crawford*, 407 F.3d 1174, 1178–79 (11th Cir. 2005).  This Court therefore "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009).   As there are no objections to the guidelines, the appropriate range is only 120 years.

Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in section 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Another factor that Section 3553(a) considers are similar sentences for similarly situated defendants for to avoid sentence disparities.  18 U.S.C. § 3553(a)(6).  Consideration of these factors necessitates a 120-year sentence.

### A.  <u>Nature and circumstances of the offense</u>

The nature and circumstance of the Defendant's offenses are abhorrent and evil.  For nearly a year, the Defendant consumed, distributed, and produced child pornography.  He engaged in online communication in predicated child exploitation "chat rooms" in the application "Kik" to share in his own and other pedophiles enjoyment of child rape.  He tricked a 13-year-old girl (Minor Victim 2) into believing they were in real relationship such that she produced countless

images and videos of herself masturbating for his pleasure. And if this were not enough, the defendant sexually abused his own 18-month-old daughter (Minor Victim 1) for his own sexual desires, recorded it, and shared it with his pedophile compatriots in Kik.

The Final PSR thoroughly details each offense of conviction, the relevant conduct of the charges to be dismissed, and the Defendant's relationship to the victims. At sentencing the government will expound in greater detail those facts. To understand the deviance of Solove's criminal enterprise would takes weeks to read and review the online postings in Kik, the thousands upon thousands of messages with Minor Victim 2, the dozens of images and videos created of both Minor Victim 1 and 2, and the crime scene photographs of Minor Victim 1's blood-stained sheets and diapers. Probation has done an impeccable job detailing these facts (DE 60 ¶ 11-58). SOLOVE's motion for variance passes over the facts of this case, instead focusing on himself and his life leading up to this case. Here is where SOLOVE's variance motion misses the point: this case is about SOLOVE's actions in this case, the impact this sentence will have on his victims, and preventing him from ever committing these crimes again. Only a maximum allowable sentence will do that.

It is unclear exactly how far back SOLOVE's sexual exploitation of children goes, but from the facts of his case, it goes back, at least mid-2019[3] and continued through his arrest in February 2020. Certainly, other offenders have done so for longer, but SOLOVE did so to the most vulnerable person imaginable: his 18-month old daughter. Known brazenly as "rsolove99" and using a picture of his own face as his profile picture, SOLOVE communicated with other pedophiles in Kik chatrooms like, "Loving Kids 1 Private," "Twee.nz," "TweenLuvWorld," and

---

[3] As noted in the PSR, SOLOVE voluntarily admitted himself for treatment related to anxiety, depression and suicidal thoughts on February 4, 2019 and admitted, "thinking disturbing thoughts regarding his daughter." Regarding his daughter, the defendant stated, "When she cries, I just don't know." PSR ¶ 126

"Actual No Limits Fun."  In these rooms he posted and received CSAM, commented on that which was posted, and discussed child rape.  SOLOVE and his online community traded CSAM images and videos of children like they were baseball cards; never caring for a moment about who they were or the pain they suffered.  The rules in the chatrooms were simple, "If the first thing you do is beg for vids, pics ornpm [sic] for trade, the second thing you will do is be kicked. This is a GROUP CHAT…get it? Well if not you soon will" (DE 60 ¶ 53).

This communication, in at least the "twee.nz" Kik chatroom on January 29-30, 2020, amounted to evidence and the elements to prove that SOLOVE and others committed a violation of 18 USC § 2252A(g), child exploitation enterprise, charged in Count 6 of the superseding information.  As detailed in the PSR at paragraphs 46-56 SOLOVE; 1) committed a chapter 110 violation, including distribution of CSAM; 2) which were part of a series of 3 or more separate incidents; 3) involving more than 1 victim; and 4) were committed with at least 3 other individuals.  They communicated about CSAM and rape so nonchalantly, it was as if they were discussing a recent sporting event over a friendly game of cards.[4]

The PSR noted the communication SOLOVE engaged in with others and how many times they shared CSAM, but this only encapsulates as small window (usually 1-2 days) of time over months and months of exploitation.  Fortunately, in at least three (3) of these chatrooms, Homeland Security Investigations (HSI) undercover agents in Tennessee, Michigan, and a sheriff's detective in Winnebago County, Wisconsin, memorialized the communication, the photos and videos posted, and engaged in private chat with SOLOVE.  There work led first, to the rescue of an 18-month of child --- the Defendant's daughter.

---

[4] Defense counsel was given a very heavily redacted copy of these communications pursuant to the protective order in this case.  The government can make the unredacted version available for the Court upon request.

From at least the time that she was 1 year old, SOLOVE molested his daughter, Minor Victim 1 using her a pawn, a toy, and part of his game to impress his fellow pedophiles. As noted in the PSR, photographs from SOLOVE's phone show his penis pushing into his then 1-year-old daughter's rectum (PSR ¶ 26). He photographed her vagina when she was 18 months old and used these pictures to engage with other online pedophiles (PSR ¶ 11). But he did more: on at least two occasions he video recorded on the couch of their living room, his own 18-month-old daughter, in her pink pajamas and pacifier in her mouth, with her hand on his erect penis, as she moved it back and forth like a video-game joystick (PSR ¶ 12). What more did he need to do to defile his own daughter? He brazenly admitted his crimes online, perhaps in a show of bravado, to one of the undercover agents, and even sent a non-sexual picture of himself with Minor Victim 1 to prove he was in fact her father (PSR ¶¶ 12-14).

In the course of these communication in Kik, he engaged in an online sexual relationship with a 12-year old New Zealand girl who sent him videos, whispering seductively his name, "Rob," as SOLOVE had requested. (PSR ¶¶ 44-45). He posted about her and her topless photos in the Kik chatrooms. She was identified and confirmed the same.

SOLOVE met Minor Victim 2 on Kik in the summer of 2019. At 13 years' old when they met, Minor Victim 2 believed their relationship real, loving, and genuine. SOLOVE lied to Minor Victim 2 about who he was, his age, his relationship to her, and his relationship to Minor Victim 1 (saying she was his sister). Minor Victim 2 confided in him with her secrets, her hardships, and was there to comfort him. SOLOVE manipulated Minor Victim 2, used her for his own sexual gratification, and likely convinced himself that he in fact did want to be with her. They planned on multiple occasions to meet at Minor Victim 2's home. They communicated in tens of thousands of messages and sent masturbation videos to each other. In turn, SOLOVE posted Minor Victim

2's videos in Kik for the pedophile world to possess and re-distribute forever.  Throughout all of this, SOLOVE solicited and enticed MV2 to commit sexual acts on herself and for when they would meet in person (PSR ¶¶ 24-43).

What remains is a now 15-year-old girl who knows this is "one of my biggest regrets for the longest time…, [has] affected me emotionally, but it's affected my relationship with my parents, my view of myself, my view on people, and it's made me regret everything I've ever done…, [and feels] absolute disgust and filled with so much anger towards myself and the person who caused everything. I know life moves on, but this is something I'm going to carry with me forever" (PSR ¶ 62).

SOLOVE was apprehended at his home in Boca Raton where he lived with Minor Victim 1's mother and grandparents.  On cellular phones, agents found hundreds of images and videos of CSAM he had acquired via Kik and the online storage facility Mega.nz.

During his interview, he professed that the images of Minor Victim 1 were in fact fake: that he had created those using software on his phone.  What is even more incredible, he told investigators that the videos of Minor Victim 1 manipulating his penis were fake and similarly, he had used software on the phone to superimpose a video of Minor Victim 1 shaking a baby bottle over a video of himself masturbating; another lie in SOLOVE's arsenal.  This falsity has been proven untrue by digital forensic investigators.

Minor Victim 1 was taken to the hospital where doctors performed surgery to repair vaginal and rectal tearing caused by a foreign object or body part (PSR ¶ 18).  The facts of his case dictate it was in fact SOLOVE's penis that cause this as he captured the act with his phone (PSR ¶ 26).  Minor Victim 1 is now only two-and-a-half years old and no one could say whether these traumatic injuries will cause her health issues in the future or even prevent her from baring children.

Simply put, the Defendant sexually abused children for his own gratification.  He did this repeatedly and without remorse.  And worse, he recorded it.  He memorialized it in a fashion in which the heinous nature of his conduct will digitally live forever and continue to victimize these children.

Although this Court must consider other factors beyond the Defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g*., *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court."). By consistently exploiting multiple children, including his own daughter, the Defendant has likely wreaked a lifetime of emotional damage on each victim. By recording this sexual abuse, the Defendant exposes each child to a lifetime of possible exploitation and torment.  Anything less than a maximum 120-year sentence is insufficient and does not adequality account for the offense conduct or provide justice to the countless victims, most importantly Minor Victim 1 and Minor Victim 2.

### B.  <u>History and characteristics of the Defendant</u>

The Defendant's history and characteristics also weigh strongly in favor of a 120-year sentence.  The Defendant reports being a victim of sexual abuse himself.  More than anyone else, he should know the consequences of sexual abuse.  Not to minimize any trauma the Defendant incurred, this does not justify his subsequent sexual assault of others.  Suffering this pain would hopefully motivate victims (such as the defendant) from inflicting this pain on others; let alone their own family.  Yet in this instance, the Defendant continued the sexual abuse.

The Defendant has provided an account of how he was victimized as a child, his difficult childhood, and a lack of familial support.  And despite all of this, his criminal history is limited

(PSR ¶¶ 99-105), his only drug of choice was marijuana until July 2019 (PSR ¶ 129), and he has no history of alcohol abuse (PSR ¶ 128). Despite not graduating from high school, he reported taking some online college courses in marine biology and been skilled as a dog trainer, aquatic specialist, and forklift operator (PSR ¶ 131-32). Much worse would be expected and understood.

Regardless of what impact his upbringing may have had on his life, it serves as no justification for his choice to violate the law and use young children for his personal gratification. To whatever degree those events may explain the Defendant's behavior; they do nothing to mitigate his willful choice to violate the law. *See generally* Bruce J. Winick, Sex Offender Law in the 1990s: A Therapeutic Jurisprudence Analysis, 4 Psychol. Pub. Pol'y & L. 505, 524 (1998) ("People diagnosed with pedophilia do not molest children in the presence of police officers or in other situations presenting a high likelihood of apprehension. Rather, they act with stealth, deception, and premeditation in an effort to avoid detection. This is purposeful, planned, and goal-directed conduct, not spontaneous and uncontrollable action or action that is substantially beyond the individual's ability to avoid."); *id.* at 523–24 ("There is nothing in the diagnostic criteria for pedophilia or any of the other paraphilias that suggests that individuals diagnosed with these disorders suffer from any cognitive impairment that affects their ability to understand the wrongfulness of their conduct or that renders them irrational in any respect or unable to control their actions.... Moreover, there is nothing in the clinical literature that suggests that sex offenders are unable to exercise self-control.").

### C. **The need for the sentence imposed**

There can be no doubt the "prevention of sexual exploitation and abuse of children constitutes a government objective of *surpassing importance*." *New York v. Ferber*, 458 U.S. 747, 757 (1982) (emphasis added). The Court in *Ferber* went on to note that "[i]t has been found that

sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id.* at 758 n. 9. Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769 (2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just deserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). This is especially true when, "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses..." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable).

As demonstrated, the Defendant's conduct is reprehensible.  He repeatedly sexually abused his infant daughter for at least 7 months.  He recorded his sexual abuse. The abuse has been shared with the world.  The Defendant then solicited a 13-year old girl for more than 8 months having he produce dozens of masturbation videos and manipulate her into believing they were in love.  The abuse has been shared with the world.  Finally, he engaged in online communication with pedophiles for the pure joy of talking about child rape and exchanges pictures of the same for pure enjoyment.  Taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a 120-year sentence.

**D.** **Reflect the seriousness of the offense, promoting respect for the law, and provide just punishment**

This Court's sentence must consider the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43.

The Defendant's actions violated federal law, but they also transgressed every conceivable normative principle undergirding our laws. While he sat at home, supposedly caring for his own

daughter, SOLOVE molested and exploited Minor Victim 1, and exploited Minor Victim 2 for his own deviant desires.  The Defendant has forever affected these two children and their families. This Court's sentence must express an appropriate level of social condemnation of his crimes.

### E.  Impact on the Victims

It is axiomatic that hands-on sexual abuse and online exploitation inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eighth Amendment challenge to capital punishment for the rape of a child by her stepfather:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

*Kennedy,* 554 U.S. at 435 (citing various studies).  Those months of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide.  *Id*. at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting).  Sexually exploited children also struggle to develop healthy affectionate relationships, they suffer from sexual dysfunctions, and they have a tendency to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted).  None of this means offenders who were victims themselves should be punished any less.

The Eleventh Circuit has long upheld sentencing decisions where the victim's impact was a driving factor.  *See Irey*, 612 F.3d at 1208 ("When child pornography is produced in conjunction with the sexual abuse of children, as it was here, the harm to the child victims is magnified and

perpetuated."); *see also United States v. Hall*, 965 F.3d 1281, 1286–87 (11th Cir. 2020) (discussing how child sexual abuse with production of child pornography caused the victim's "mental health struggles over the years," "a lot of ... depression," nightmares, and cutting her "arms real bad"); *Sarras*, 575 F.3d at 1220 (approving the district court's regard of "the fact that the [child pornography] victim will probably, even with counseling, never fully recover from this").

Minor Victim 2 and the child from New Zealand were thirteen and twelve years' old, respectively, at the time of the offenses; old enough to form memories and remember these experiences. It is too early to tell how deeply the trauma is sewn. Minor Victim 2's victim impact statement gives some hint into the confusion that will affect her entire life. No one knows for sure when, where, or how the damage from the Defendant's sexual exploitation will manifest itself as the victims grow older. But one thing is certain—before the victims had even reached high school, the Defendant destroyed any possibility of normality in their lives.

MV1 was an infant, SOLOVE's daughter, and the one person he was charged with to care for while his wife, and in-laws worked to support the family.[5] Thus, the Defendant sexually violated a member of his own family who was barley learning to walk, said but a few words, and could not object. Agents discovered the images and videos he posted of her online, and the images of his sodomizing her on his phone. Who knows how many other occasions the Defendant abused Minor Victim 1 and did not record it.

With all these victims, the Defendant not only sexually exploited the children, but he recorded it. The images and videos were saved, and these images were shared on the internet. These children will be victimized forever and live in a world in which pictures and videos of their abuse can be uploaded and live in perpetuity on the Internet. Sadly, this all occurred under the

---

[5] SOLOVE did work off-and-on during from 2019 to 2020.

consent and supervision of the Defendant as a relative and caretaker to Minor Victim 1, a "boyfriend" to Minor Victim 2, an acquaintance to the child in New Zealand, and who knows how many others.

Finally, of the hundreds of images and videos of CSAM the defendant possessed on his devices, several were identified as known children.  To that end, one victim, known as "April" of the 'AprilBlond' series normally requests restitution but declined in this case in favor of restitution being ordered to Minor Victim 1 and 2.  She was between 5 and 8 years' old when her uncle sexually abused her and recorded it.  As a preview of where Minor Victim 1 and 2 might find themselves as their images and videos are traded online like "April's" has, she notes:

> It is difficult to trust people because I wonder if they have seen the images of my child abuse and are a pedophile. I get nervous when a person looks at me too long or just more than a passing glance. I wonder if they are putting together who I am from an image they saw on the internet. I feel scared, anxious, and angry I could be abused again if a person recognizes me who saw the images of my abuse.
>
> …
>
> As a child I didn't have a choice what happened to me. Now, I have to suffer twice; the first time was being abused and the second time is the ongoing anxiety due to the images of my abuse forever accessible. It's impossible to cope with and accept that I have to live with the images of my abuse being available on the internet indefinitely.

(Exhibit A – Victim Impact Statement of 'April' of the 'AprilBlond' series.

### F.  <u>Adequate deterrence and need to protect the public</u>

Deterrence is important for crimes involving the sexual abuse of children, including CSAM. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See Id*.  The Supreme Court has noted "grave concerns over the high

rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). The Defendant fits within that class.

The Eleventh Circuit recognized in *Irey* that research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." 612 F.3d at 1214 (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.").

### G.  Length of sentence imposed, guidelines appropriateness, and sentencing alternatives

The Defendant contends that the government's sentencing recommendation is a de facto life sentence, despite the sentence being within guidelines.  The Seventh Circuit recently analyzed this in *United States v. McDonald*, 981 F.3d 579 (7th Cir. 2020).  The court first noted that "a within-guidelines sentence is reasonable."  *McDonald*, 981 F.3d at 581.  *Gall v. United States*, 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007).  The court then analyzed the district court's review of the §3553(a) factors.

> "[T]he probability that a convict will not live out his sentence should certainly give pause to a sentencing court." [*United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006)]. But we have upheld a de facto life sentence where the sentencing court determined that the defendant "showed a risk of recidivism and lack of respect for the law," [*United States v. Volpendesto*, 746 F.3d 273, 299 (7th Cir. 2014)], and the court "appreciated the severity of the sentence." *United States v. Cheek*, 740 F.3d 440, 454 (7th Cir. 2014) (quoting *United States v. Patrick*, 707 F.3d 815, 819–20 (7th Cir.2013)); *see also United States v. Kincannon*, 567 F.3d 893, 901 (7th Cir. 2009). The district court did so here. In choosing his sentence, the court considered McDonald's age and health issues as "difficulties" he would face in custody. But the court found the seriousness of McDonald's conduct, his wavering acceptance of responsibility, and the substantial risk of his recidivism more "significant." *See United States v. Gross*, 437 F.3d 691, 693 (7th Cir. 2006) (distributing child pornography "is quite serious," because it "creates a market for its production, which inevitably leads to the abuse of children."); *Wurzinger*, 467 F.3d at 653 (even if "older

offenders are generally less likely to commit crime," "what matters is whether the court reasonably concluded that [the defendant] in particular is a risk for further crimes"). The court's explanation of its reasons for McDonald's sentence was therefore adequate. *See* [*United States v. Cunningham*, 883 F.3d 690, 701-702 (7th Cir. 2018)].

*McDonald*, 981 F.3d 579, 582 (7th Cir. 2020).

To combat the outcome of the guideline recommendation that a 120-year calculation is appropriate, the Defendant's Sentencing Memorandum argues: 1) the sentencing guidelines do not reflect similarly situated defendant's sentences; 2) the government has manipulated the guidelines; and 3) there are alternatives to a "life sentence (DE 55).

### 1. The sentencing guidelines are inappropriate

SOLOVE cites to three 11th Circuit cases where defendants were convicted of production of child pornography and received 30 years or less (DE 55:1-3). These sentencings are in fact outliers.

Each case can be differentiated from SOLOVE's. William IREY was indicted and plead guilty to the only count of production of child pornography; the government agreed to a low-end-of-the-guidelines sentence. *See* 06-CR-00237-GAP-DAP (DE 41) (Plea Agreement). Interestingly enough there was a lengthy cooperation agreement within IREY's plea agreement (*Id.* at pages 3-7), but the Court still sentenced the defendant to the maximum 30-year sentence. Jack Furman DEAN was indicted on, and plead guilty to, one count of production and one count of possession of child pornography. *See* 08-CR-00065-MHT-SRW (DE 1, 29:3-4). The production offense carried a minimum 5 years to a maximum 20 years' imprisonment, and the possession offense carried a maximum of 10 years (*Id.* at DE 23:5). He was sentenced to the maximum allowable under the law: 30 years. Likewise, John David LATIMER was indicted on, and plead guilty to, one count of production and one count of possession of child pornography. *See* 18-CR-00278-MHC-JKL (DE 19; 52:3). At sentencing the government recommended 25 years and the court

imposed the same (DE 53:17).     The undersigned cannot speak for the charging decisions and

sentencing recommendations in those particular cases.  What is clear though is that the courts in

those cases sentenced the defendants to the maximum or near maximum allowable under the law.

*In this case*, the defendant was charged by superseding information with 17 counts, one of which

carried a 20-year minimum mandatory, two of which carried a maximum sentence of life; he won't

be sentenced to either one.

Recently, in 2019 the Eleventh Circuit upheld a 1440-month (120 year) sentence, as is

being requested in the case at bar.  In *United States v. Kirby*, 938 F.3d 1254 (11th Cir.2019), the

defendant was convicted at trial on three counts of production and two counts of possession with

intent to view of child pornography, thus creating a maximum sentence of 1440 months. *Id.* at

1256.  The charges stemmed from Kirby's surreptitious recording of his 13-year-old stepdaughter.

*Id.*  As in SOLOVE's case, where the guidelines recommended life, which exceeded the statutory

maximum of each crime charged, the *Kirby* court applied U.S.S.G. 5G1.2(d):

> If the sentence imposed on the count carrying the highest statutory maximum is less
> than the [ordinary guidelines recommendation], then the sentence imposed on one
> or more of the other counts shall run consecutively, but only to the extent necessary
> to produce a combined sentence equal to the [ordinary guidelines
> recommendation].

*Id.* at 1257.  The Court reminded that, "the Supreme Court has described a life sentence as the

'second most severe [punishment] known to the law,' *Harmelin v. Michigan*, 501 U.S. 957, 996,

111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), and we cannot accept Kirby's invitation to hold that a

1440-month sentence is worse."  *Id.* at 1258.  In upholding the 1440-month sentence, the Court

stated, "Before imposing the longest sentence that it could, the district court thoroughly discussed

Kirby's particularly heinous conduct and direct participation in the creation of child pornography,

his breach of public trust as a police officer, and his total failure to take responsibility for his

actions. We see no abuse of discretion."  *Id.* at 1259.

The following cases are also from within the Southern District of Florida: *United States v. Scott Michael Williams* (12-10029-CR-KING), defendant, 48, plead guilty to two counts of production, one count of distribution, and two counts of possession of child pornography and possession of a firearm by a felon. These charges stem from photographs of Williams' minor-aged relatives engaging in lewd and lascivious acts with the Defendant found on his computer. He claimed he was sexually abused as a child. He was sentenced to 100 years in federal prison by U.S. District Court Chief Judge Federico A. Moreno. In *United States v. Edgar Geovani Esquivel Castillo* (1:10-CR-20120-DMM), the defendant plead guilty to four counts of production and one count of possession of child pornography involving videos his produced of himself engaging in sex with a three-year-old female he babysat at his home. With guidelines identical to SOLOVE, he was sentenced to thirty years for each of the production convictions and ten years for the possession conviction, to run consecutively, for a total sentence of 1,560 months' imprisonment. In *United States v. Leslie Grey Vanaman* (13-80088-CR-ZLOCH) the defendant, 44, plead guilty to receipt and possession of child pornography (government charged but agreed to dismiss the production count), and had a previous conviction for possession of child pornography. Vanaman sent erotic images of children in exchange for child pornography and lived in a nudist colony where he took posed pictures of 4-5 children (some of which qualified as child pornography). He was sentenced to 720 months -- the stacked statutory maximum term of the two counts.

In cases where the defendant engaged in sexual activity with children, other courts have sentenced the defendants to the advisory guidelines sentence or beyond. *United States v. Huskey*, 349 Fed.Appx. 495 (11th Cir.2009) (70–year sentence for Defendant, who fell within criminal history category I, who engaged in anal, oral, and vaginal sex with his daughter and penetrated her vagina with objects, while she was between the ages of 6 and 9, recorded the abuse in photographs

and on videotapes, and traded images of the abuse over the internet for other child pornography); *United States v. Oliver*, 281 Fed.Appx. 898 (11th Cir.2008) (130–year sentence for the Defendant, with no mentioned criminal record, who produced images of himself molesting a single victim, his 6–year–old granddaughter, and distributed those images over the internet); *United States v. Foster*, 209 Fed.Appx. 942 (11th Cir.2006) (life imprisonment for the Defendant who fell within criminal history category I, and who during a 4–year period engaged in oral and vaginal sex with a single victim who was less than 12 years old when the abuse began). *Sarras*, 575 F.3d at 1208, 1220-21 (11th Cir. 2009) (upholding as reasonable a 100-year sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Kapordelis*, 569 F.3d 1291, 1318-19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance from the 262-327-month advisory guidelines range and included 240-month sentences on counts charging production of child pornography under § 2251(a) and 180-month consecutive sentences on counts charging receipt of child pornography under § 2252A(a)(2)(A)); *United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), cert. denied, 129 S.Ct. 2814 (2009); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-month (62.5 year) sentence for a first-time offender

who had taken pornographic pictures of five 8- to 11-year-old girls, including two of his granddaughters), cert. denied, 129 S.Ct. 962 (2009).[6]

The maximum allowable sentence under the law is routinely recommended and approved by the Eleventh Circuit when an offender sexually abuses a child and produces images or videos of it.

### 2.   The Government has not manipulated the guidelines

SOLOVE compares his case to another before this Court: *United States v. Tonya Bagley*, 20-CR-80069-DMM, who faces a maximum sentence of 35 years upon sentencing.  He accuses the government of sentence manipulation in this case.  First, Bagley and Solove's cases are different, second there is no manipulation.

SOLOVE asserts that Bagley could have been charged with additional counts.  To be fair, those additional counts of production[7] and distribution would include the same conduct at the same instance of the counts Bagley has plead guilty to.  Each of the seventeen (17) counts alleged against SOLOVE in the superseding information are unique and distinct to particular actions taken by SOLOVE at different times or are necessary predicates for the charge of child exploitation enterprise.  Further, SOLOVE plead guilty to only five (5) of the counts, which relate to unique actions: Count 1 relates to his production of CSAM videos of Minor Victim 1, Count 2 relates his production of CSAM videos of Minor Victim 2 from one particular day (when there were many), Count 3 and 4 relate to the distribution of Minor Victim 1's images and video in two Kik chat rooms, and Count 5 relates to the many victims of child pornography, other than Minor Victims 1

---

[6] Between late 2007 to 2016 (the range of statistics the government was able to obtain), federal judges across the country sentenced at least 100 defendants convicted of producing child pornography to terms of life or life-equivalent sentences of 80 years (960 months) or more (*see* Exhibit B).

[7] Bagley was charged with conspiracy to produce child pornography because of her criminal scheme with Robert Dunn.  Dunn was in the Southern District of Florida when committing the crimes, while Bagley was in the District of Colorado.

and 2 that SOLOVE possessed on his devices.  If there was any manipulation, it was in the defendant's favor, because he only faces 120 years, and not two life sentences plus 350 years.

Proving sentencing manipulation requires showing that the government engaged in "outrageous" conduct that was "fundamentally unfair." *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007) (the standard is high).  This Circuit has never encountered a case involving "extraordinary misconduct" to justify a finding of sentencing manipulation. *See United States v. Bohannon*, 476 F.3d 1246, 1252 (11th Cir. 2007) (government's selection of age of "minor" victim for sting operation was not manipulation even though the selected age resulted in enhancement under guideline); *United States v. Williams*, 456 F.3d 1353, 1370-71 (11th Cir. 2006) (government's purchase of crack cocaine rather than powder cocaine was not manipulation despite sentencing differential); *Sanchez*, 138 F.3d at 1412-13 (government informant's selection of a fictitious amount of drugs to be stolen by defendants was not manipulation of the quantity).

Here, the government's decisions fell well-within the considerable discretion it is granted in pursuing investigations regarding Minor Victims 1, 2, and the multiple Kik chats the defendant had with like-minded pedophiles. "[T]here is nothing wrong with the government attempting to strengthen its case for conviction" by conducting additional investigation. *United States v. Govan*, 293 F.3d 1248, 1251 (11th Cir. 2002). The government diligently investigated and sought the superseding information when it was prepared to move forward.

3.  <u>Sentencing alternatives are not appropriate here</u>

SOLOVE contends that his sentence should be mitigated to something less than the maximum because alternatives, including civil commitment, supervised release, and sex offender registration, exist (DE 55:4-6).  SOLOVE makes this argument suggesting he is not so dangerous that the maximum sentence is appropriate.  For this proposition SOLOVE relies on the 2016 U.S.

Sentencing Commission Report and a plethora of studies regarding sex offenders. Where Courts can look for guidance is to the 2012 Sentencing Commission Report (hereinafter Sent. Rep.)[8] regarding the guidelines in child pornography cases. The Commission found when surveying district judges, that the vast majority that the guideline and statutory penalties were appropriate. (Sent. Rep. p. 247.) Average sentences for production had actually been increasing which the Sentencing Commission reported was due to two trends: 1) increasing average guideline minimums; and 2) the significant number of sentences in production cases at or above the middle of the guideline range (including upward departures or variances). (Sent. Rep. 255.) And while variant sentences had increased, the extent of the reduction is only 20.9%, suggesting that while more judges have sentenced below the Guidelines, they have not varied by that much – an average of 62 months. This defendant is requesting a variance from the 1440-month maximum.

Further, the estimates of recidivism cited by defendant may actually be low, as is acknowledged as a limitation by Eke, Seto, & Williams, "[o]ur reliance on official records for both criminal history and reoffending may have limited the strength of the association that we could find, as both are underestimates of true offending."[9] And they admit that, "[h]istorical cases of sexual contact offenses, especially those committed by child pornography offenders who appeared to have no prior criminal history, may provide a window into undetected sexual offending; i.e. offenses that were not (at the time) reported to police or documented in file information." *Id.*

This concept is further expounded in Risk Assessment of Online Child Sexual Exploitation Offenders," *The Journal of the American Academy of Psychiatry and the Law*, November 2, 2019,

---

[8]  http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm)

[9] Eke, Seto, & Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: an Extended Prospective Follow-Up Study," *Law and Human Behavior* 17 (2011).

Matthew E. Hirschtritt, MD, MPH, Douglas Tucker, MD, and Rene´e L. Binder, MD.  Hirschtritt states that when authors (i.e. Seto) used only official records, the rate of previous contact offenses was low (12.2 percent); however, when self-report data was used, this number increased to 55.1%. Additionally, at one particular medium security prison, researchers conducted a voluntary treatment program with offenders.  "At the time of sentencing, 26 percent had an officially documented contact offense; by the end of the treatment period, however, 85 percent had disclosed a history of contact offending."  *Id.* Michael L. Bourke & Andres E. Hernandez, *The "Butner Study" Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, 24 FAM. VIOLENCE 183, 183 (2009).

Therefore, because recidivism is defined in terms of subsequent arrests, low numbers of contact offenses based upon arrests is not surprising.  These results are explained by multiple factors.  First, child molesters do not boast about their crimes to the general public, but only between themselves.  Second, victims of sex crimes are reluctant to report such crimes.  Children are particularly reluctant to talk about sexual abuse.  Bonta & Hanson, "*Gauging the Risk for Violence: Measurement, Impact and Strategies for Change*" (1994) (published by the Solicitor General Canada, Ministry Secretariat (Ottawa)); s*ee e.g.* Hanson & Bussière, "*Predictors of Sexual Offender Recidivism*" (1996) (published by the Solicitor General Canada, Ministry Secretariat (Ottawa)).  Any study, therefore, which relies on subsequent arrest and convictions, should be suspect–particularly in light of the fact that this defendant self-reported his inappropriate desires to a mental health provider and was not deterred to then commit these offenses.

This Court should consider the Guidelines in this case, as the 11th Circuit mandates, but even if this Court were to agree with SOLOVE's argument, a sentence at or near the mandatory minimum is not reasonable when considering the goals of sentencing found in 18 U.S.C. § 3553:

to protect the public; punish the offender; deter others; and deter SOLOVE.  The defendant's suggestion that alternatives to incarceration do not meet these goals.

The Defendant's conduct and history show that he is an incredibly high risk to recidivate. He is a danger to the community, regardless of his age.  His conduct will never change, and this conduct must be adequately punished.  A 120-year sentence adequately accounts for the §3553(a) factors.  This sentence is within the guidelines range is therefore reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (Though we don't "automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect" it to be.).  His complaint that he won't live to see the end of the government's 120-year recommended sentence is of no merit.  *See United States v. Kirby*, 938 F.3d 1254, 1258-59 (11th Cir. 2019) (120 -year sentence affirmed where guidelines calculation of life was greater than statutory maximum); *United States v. Fox*, 926 F.3d 1275, 1276, 1282 (11th Cir. 2019) (30-year sentence for a 60-year-old defendant convicted of production of child pornography affirmed); <u>Sarras</u>, 575 F.3d at 1208, 1219–21 (100-year sentence affirmed where guidelines calculation of life was greater than the statutory maximum).

## IV.    **<u>CONCLUSION</u>**

The Defendant sexually exploited his daughter from the time she was 12 months old until the time she was 18 months old.  He solicited a 13-year-old girl and persuaded her to produce child exploitation material of herself.  He participated and encouraged online communication in the distribution and production of child exploitation material.  He recorded his abuse of his victims and did so over and over again.  These victims' lives are forever changed by the Defendant, the

true definition of a pedophile.  The United States requests that this Court should sentence the

Defendant to a 120-year sentence of imprisonment.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

*Gregory Schiller*
_____

By: GREGORY SCHILLER
Assistant United States Attorney
Court ID # A5501096
500 Australian Avenue, Suite 400
West Palm Beach, FL 33401
P: (561) 820-8711
E: Gregory.schiller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of May 2021, the foregoing was electronically filed and consequently served on defense counsel.

_____*/s/ Gregory Schiller*_____
For the United States Attorney's Office